

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS CONDON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, CHRISTOPHER LINDAHL, ) <br> AND THOMAS GRIMM, ) <br> ) <br> Defendants. ) <br> ) | Case No. 09 C 2641 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Thomas Condon alleged that a Chicago police officer, Christopher Lindahl, put him in a headlock and repeatedly punched him in the face while he was handcuffed to a bench in a police station. Condon sued Lindahl, a second officer, Thomas Grimm, who failed to stop Lindahl, and the City of Chicago. The City moves for summary judgment, arguing that Condon has no evidence that a municipal policy caused his injury.

I. Factual Background[1]

---

[1] Neither party's memorandum of law in support of or opposition to the motion for summary judgment contains a statement of facts. Courts in this district have repeatedly informed litigants that a Local Rule 56.1 statement of facts is not a substitute for a statement of facts contained in a memorandum of law. *Cleveland v. Prairie State College*, 208 F. Supp. 2d 967, 972-73 (N.D. Ill. 2002). In fact, the City was chastised for this very practice in March of this year. *Courtney v. Chicago Police Dept.*, No. 10 C 2782, 2011 WL 1118874, at *3 (N.D. Ill. Mar. 24, 2011). Among other things, such a practice allows a party to circumvent the 15-page limit on briefs imposed by Local Rule 7.1. *See RJB Prop. Inc. v. Bd. of Educ. of City of Chicago*, No. 04 C 5226, 2006 WL 224101, at *1 (N.D. Ill. Jan. 24, 2006). Not only has the City circumvented the page limitation of L.R. 7.1 by omitting a statement of facts from its brief, it also has clearly modified the font and line-spacing of its brief to further compact its brief.

In May, 2007, Condon was a resident of the Haymarket/McDermott Center, an in-patient treatment center for alcoholism. (Def. L.R. 56.1(a)(1) St. ¶ 9). When Haymarket officials noticed that Condon was intoxicated, they required him to go to the Center's detox department. (Def. St. ¶ 10). Condon refused and the officials called the police. (Def. St. ¶¶ 10-11). Lindahl and Grimm attempted to convince Condon to enter the detox department, and when he persisted in his refusal, the officers arrested him. (Def. St. ¶ 11).

At the police station, Condon was seated on a bench with one hand cuffed to a bar along the wall. (Def. St. ¶ 13). While Condon was handcuffed to the wall, he and Lindahl exchanged insults. (Def. St. ¶ 14). According to Condon, Lindahl then put him in a headlock and punched him three times in the face. (Def. St. ¶ 15). Condon also alleges that Grimm witnessed the assault but did nothing to stop it.

Lindahl then completed a tactical response report (TRR) to document his use of force against Condon. (Def. St. ¶ 17). Lieutenant Deborah Izzo reviewed Lindahl's TRR. Izzo assumed that Condon was handcuffed but did not confirm her assumption with Lindahl or Condon. (Izzo Dep. at 31-32). During her review of the TRR, Izzo did not interview Condon and accepted Lindahl's statement that Condon attempted to disarm Lindahl, prompting Lindahl's use of force. (Pl. L.R.

---

This is not a complicated case and there is little reason for a party to engage in sleights of hand in order to comply with the Local Rules. However, if the City indeed felt that it could not adequately present its arguments within 15 pages, the proper course of action would have been to seek leave to file a brief in excess of the page limitation and not to alter the font and spacing of its brief and omit portions of its brief.

The Court will assume that the City, having now been cautioned twice in the past year for taking liberties with Rule 7.1, will take no such liberties in the future. Indeed, the City should consider itself on notice that the Court will strike further briefs that fail to include a statement of facts or that manipulate font or spacing. The Court orders counsel for the City to provide a copy of this opinion to Corporation Counsel to ensure that in future cases the City strictly complies with the Local Rules.

56.1(b)(3)(C) St. ¶¶10-11). Consequently, Izzo found that his use of force complied with the City's general force orders. (Def. St. ¶ 18).

Because Lindahl alleged that Condon assaulted him, police detectives William Fiedler and Greg Andras investigated Lindahl's allegations. (Pl. St. ¶ 13). During the course of that investigation, neither Fiedler nor Andras investigated Condon's allegation that Lindahl had abused him. (Pl. St. ¶¶ 14-15, 23). Nor did Fiedler report any allegation of abuse by Condon to Izzo or anyone in the police department's Internal Affairs Division. (Pl. St. ¶¶ 17-19). Based on the investigation, Fiedler approved a felony battery charge against Condon. (Fiedler Dep. at 96-103).

In 2009, Condon filed this suit. Shortly thereafter, the Independent Police Review Authority (IPRA) opened an investigation into Condon's allegations of excessive force. (Def. St. ¶ 19). The investigation was assigned to Charles Salvatore. (Def. St. ¶ 19). Condon refused to sign an affidavit regarding the allegations he made against Lindahl, and consequently, Salvatore closed the investigation. (Def. St. ¶ 20). Because Salvatore had to close the investigation because of Condon's reluctance to swear to his grievances, Salvatore never interviewed Lindahl or Grimm. (Pl. St. ¶ 38). Salvatore has investigated more than 100 complaints without sustaining a complaint against an officer. (Pl. St. ¶ 33).

## II. Standard of Review

Courts must grant a motion for summary judgment when "there is no genuine issue as to any matter fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, the nonmoving party must establish that there is a genuine dispute over material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). A "material" fact is any fact that may affect the final adjudication of the case under existing law and if it creates an inference that would a reasonable jury to find in favor of the nonmoving party. *Id.*

The court, however, must evaluate all admissible evidence in a light most favorable to the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir.2003). Nevertheless, to survive summary judgment, the party must present more than speculation and conjecture. *Id.* In other words, the nonmoving party cannot rely on the pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

III. Analysis

Municipalities are not liable for the torts of their employees under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Liability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992). To establish municipal liability for a constitutional tort, therefore, a plaintiff must establish that the tort was committed at the policymaking level of government. *Bd. of Cnty. Comm'r of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 402-04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Put another way, a plaintiff must do more than identify conduct properly attributable to a municipality, but in addition demonstrate that the municipality was the "moving force" behind the constitutional violation. *Brown*, 520 U.S. at 404. To meet this standard, a plaintiff must demonstrate that a municipality's official policy or custom caused the constitutional injury. *Monell*, 436 U.S. at 691; *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). To prove an official policy or custom, a plaintiff must prove that the constitutional injury was caused by: (1) the

enforcement of an express municipal policy; (2) a practice that is so widespread and settled that it constitutes a custom with the force of law; (3) a decision made by a person with final policymaking authority. *Wragg*, 604 F.3d at 467; *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010).

In the absence of direct evidence of an express municipal policy or a decision made by a policymaker, a plaintiff must demonstrate that there is an unwritten policy at issue. *Thomas*, 604 F.3d at 303. The usual way in which a plaintiff demonstrates the existence of a widespread practice is "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything . . . adopt[ed] the misconduct" of its agents. *Jackson v. Marion Cnty.*, 66 F.3d 151, 152 (7th Cir. 1995). When this is the method of proof employed, a single incident of misconduct is not sufficient to demonstrate a widespread municipal custom with the force of law. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Jackson*, 66 F.3d at 152. A plaintiff may also point to a gap in the express policy that constitutes an implicit policy. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). In either instance, a plaintiff must demonstrate that there is an implicit policy at work and that his injury was not simply the result of a random event *Thomas*, 604 F.3d at 303.

Here, Condon does not argue that an express policy or a person with final policymaking authority caused his injury. Rather, he argues both that his injury was caused by a widespread practice and that there is a gap in the City's express policy. Condon first argues that the City routinely fails to investigate allegations of or to discipline confirmed police misconduct and that its practice is so widespread that it constitutes an implicit municipal policy. In a similar vein, Condon

5

further argues that there is a "code of silence" among police officers whereby police officers fail to report the misconduct of other officers that is so widespread that it too constitutes an implicit municipal policy. Finally, Condon argues that gaps in the City's policy concerning allegations of police misconduct caused his injury. Condon, however, points to no evidence in support of any of his arguments.

Condon first attacks the City's procedure in reviewing TRRs. However, Condon's attacks amount at best to complaints about the way in which an individual officer reviews TRRs. Condon points to evidence that Lindahl's commanding officer, Izzo, does not routinely interview arrestees when she reviews an officer's TRR. According to Condon, this caused Izzo to form the false impression that Lindahl was armed and to be uncertain whether he was handcuffed during the altercation. Condon argues that a jury could infer from these facts that Izzo's review of the TRR was merely pretextual. A jury might possibly be able to conclude from those facts that *Izzo's* review of the TRR was pretextual, but it definitely could not conclude that the *City* had an widespread practice of pretextually reviewing its officers' TRRs, which is what he must show. Factors peculiar to a single officer involved in a particular incident are not sufficient to demonstrate a "widespread practice." *Brown*, 520 U.S. at 408. Rather, a plaintiff must demonstrate a practice so widespread that was "so pervasive that acquiescence on the part of policymakers was apparent." *Phelan*, 463 F.3d at 790. Condon's argument that Izzo ignored his allegation of police misconduct simply is insufficient to demonstrate a widespread practice.

Condon's other arguments suffer from similar defects. For example, Condon points to the fact that the detectives who investigated whether battery charges should be filed against Condon never reported or otherwise investigated Condon's claims that Lindahl used excessive force against

him. Condon also points to Salvatore's handling of the investigation into his formal complaint and Salvatore's failure to sustain any of over 100 complaints. Condon argues that a jury could infer from these various facts that there exists a widespread practice of ignoring allegations of misconduct. However, like his arguments concerning Izzo's method for reviewing TRRs, Condon extrapolates a widespread municipal practice from the discrete actions of individuals conducting investigations related to a single incident. In arguing that the City has a widespread practice of ignoring allegations of police misconduct and allowing a "code of silence" to fester, Condon points only to the actions of Lindahl, Fiedler, Andras, and Salvatore regarding his particular complaints. As noted earlier, the actions of individuals peculiar to a single incident cannot provide the basis for a widespread practice claim. The word "widespread" must be taken seriously in demonstrating a *Monell* claim. *Phelan*, 463 F.3d at 790.

Condon also argues that there are several gaps in the City's policy concerning the investigation and discipline of police misconduct. Condon first points to the absence of any express duty placed upon officers investigating suspected criminal activity to forward a suspect's complaints of police misconduct. Second, Condon points to the fact the IPRA may not interview police officers.[2] However, Condon points to no evidence that these alleged gaps in any way make the process for reporting police misconduct deficient or that investigations into police misconduct are in any way insufficient because of these policy considerations. Absent such evidence, Condon's argument amounts to nothing more than a policy disagreement and cannot provide the basis for a claim that a gap in a municipal policy caused his injury.

---

[2] This allegation grossly misstates the record. IPRA investigators are not prohibited entirely from interviewing police officers. They are prohibited from interviewing police officers before a complainant refuses to sign an affidavit attesting to his complaints.

Because Condon has pointed to no evidence that the City caused his injury, the Court GRANTS the City's Motion for Summary Judgment on Condon's *Monell* claim.

IT IS SO ORDERED.

_11/9/11_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
U.S. District Court